### STETTNER CLINIC, INC. and Alice R. Pangle, D.O., Appellant,

v.

### Mary Ellen BURNS, Individually and as Independent Executrix of the Estate of Harold W. Burns, Appellees.

### No. 07–00–0452–CV.

Court of Appeals of Texas, Amarillo.

Dec. 19, 2000.

Robert L. Craig, Jr., Eric G. Walraven, Craig, Terrill & Hale, L.L.P., Lubbock, for appellant.

Andy Aycock, Jerry Kolander, McCleskey, Harriger, Brazill & Graf, Lubbock, for appellee.

Before BOYD, C.J. and QUINN and JOHNSON, JJ.

QUINN, Justice.

Pending before the court is the appeal by Stettner Clinic, Inc. and Alice R. Pangle, D.O., (referred to as S & P) from an order entitled "Partial Summary Judgment." Through that order, signed on July 7, 2000, the trial court granted the motion for partial summary judgment of plaintiff Mary Ellen Burns, individually and as the Independent Executrix of the Estate of Harold W. Burns, and denied that of defendants S & P. Furthermore, the face of the order granting Burns's

motion states that "any issues as to the amount of damages to be recovered by Plaintiff from Defendants *are reserved* for further proceedings by this Court." (Emphasis added). Following the latter passage, however, was the statement that "[a]ll relief not expressly granted herein is expressly denied."[1] Questioning whether the "Partial Summary Judgment" was a final and appealable order, we directed S & P to explain to us why we have jurisdiction over the cause. See Tex.R.App.P. 42.3(a) (obligating the court to provide appellant 10 days prior notice of its intent to dismiss the appeal for want of jurisdiction). S & P timely responded, contending that the order was indeed final. We disagree and dismiss the appeal.

## Background

Burns sued Stettner and Pangle. The causes of action alleged against Stettner included breach of contract and conversion. The cause asserted against Pangle simply encompassed breach of contract. Furthermore, damages were sought from both defendants.

Once issue was joined, Burns moved for partial summary judgment against both defendants. That is, she sought an order declaring that a covenant not to compete, upon which her claims were founded, was valid and enforceable. In response, S & P apparently filed their own motion for partial summary judgment and disputed the enforceability of the covenant.[2] The aforementioned partial summary judgment order was entered thereafter.

## Authority

 It is beyond gainsay that, save for a few exceptions not here pertinent, an order or judgment must be final before one can appeal from it. *Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex.1994). Furthermore, an order or judgment is final when it disposes of all claims asserted by and against all parties. *Id.* The question before us, therefore, is whether a partial summary judgment containing both a Mother Hubbard Clause and a provision expressly reserving an issue for later adjudication falls within the above referenced definition of finality.

 According to S & P, the Texas Supreme Court has held that including a Mother Hubbard Clause (like that at bar) in a partial summary judgment automatically renders the judgment final even if the court failed to dispose of all claims and parties. Those decisions are *Bandera Elec. Coop. v. Gilchrist*, 946 S.W.2d 336 (Tex.1997), *Inglish v. Union State Bank*, 945 S.W.2d 810 (Tex.1997), and *Mafrige v. Ross*, 866 S.W.2d 590 (Tex.1993). Yet, careful analysis of same, in context of other Supreme Court precedent, does not persuade us to accept the accuracy of S & P's contention. This is so because the *intent* of the trial court as expressed in the order or judgment is determinative. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402 (Tex.1971) (same rules of interpretation apply in construing meaning of court order or judgment as in ascertaining meaning of other written instruments); *Permian Oil Co. v. Smith*, 129 Tex. 413, 107 S.W.2d 564, 567 (1937) (judgments are construed like other written instruments); *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24 (Tex.App.—Amarillo 2000, no pet.) (holding that in interpreting an instrument a

---

1. This provision is commonly known as a Mother Hubbard Clause, and we so refer to it in this opinion.

2. We say "apparently" because S & P's motion does not appear of record. However, a supplemental brief referring to the motion does. So too did the court mention the document in its "Partial Summary Judgment."

court strives to give effect to its parties' intent, garnered from the language of the contract, which language is considered in its entirety). And, in determining that intent we construe the document as a whole. *Wilde v. Murchie,* 949 S.W.2d 331, 333 (Tex.1997); *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex. 1988). In other words, we must give effect to all that is written, not merely to parts of the decree. *Id.* So too must we avoid assigning conclusive effect to the use or omission of commonly employed decretal words. *Wilde v. Murchie,* 949 S.W.2d at 333. Indeed, this was the purport of *Mafrige.*

In *Mafrige,* the court was grappling with the same general issue as that before us. In resolving it, the court held that "[i]f a summary judgment order *appears to be final,* as evidenced by the inclusion of language purporting to dispose of all claims or parties, [it] should be treated as final...." *Mafrige v. Ross,* 866 S.W.2d at 592 (emphasis added). Then, it held that the inclusion of a Mother Hubbard Clause in the decree before it "clearly evidences the trial court's *intent* to dispose of all the claims...." *Id.* (emphasis added). In alluding to both the order's *appearance* as a final decree and the *intent* of the trial court, the Supreme Court sought to comply with the very rules mentioned above. That is, it sought to garner the intent of the trial court in assessing the order's finality. Furthermore, the presence of the Mother Hubbard Clause was simply an indicia available which facilitated derivation of that intent. *Mafrige v. Ross,* 866 S.W.2d at 592.

To ascribe anything more to *Mafrige,* such as the interpretation proffered by S & P, is untenable. If the presence of a Mother Hubbard Clause *ipso facto* made an order final despite clear statements therein to the contrary, we would be effectively doing that which the Supreme Court said we could not do. We would be assigning conclusive effect to the use of a commonly employed decretal phrase (*e.g.,* a Mother Hubbard Clause) irrespective of its context and contrary to the admonition in *Wilde.* So too would we be ignoring *Wilde* and *Point Lookout* to the extent that they direct us to interpret the order as a whole as opposed to merely focusing on parts of it. Further still, adopting S & P's position would be tantamount to disregarding 1) the fact that the *Mafrige* court simply considered the Mother Hubbard Clause therein involved as evidence of intent and 2) its implicit holding that intent (as revealed from the body of the document) still controls. This we do not think the Supreme Court required of us through *Mafrige.*[3]

Nor do we believe the Supreme Court intended to overturn *Wilde* and *Point Lookout* via *Inglish* and *Bandera.* Indeed, the latter two opinions merely relied upon *Mafrige,* thus they must be construed in the context of *Mafrige.* And, since *Mafrige* focused upon the intent of the trial court as evinced through the words used in the particular decree, it must be said that *Inglish* and *Bandera* reiterate that procedure.

■ With the foregoing said, we turn to the document before us. Unlike that in *Mafrige, Bandera* and *Inglish,* the order at bar not only contains a Mother Hubbard Clause but also a statement expressly reserving the issue of damages for later res-

---

3. Our interpretation of *Mafrige* is in accord with those uttered in *Rodriguez v. NBC Bank,* 5 S.W.3d 756, 762–63 (Tex.App.—San Antonio 1999, no pet.), *Lowe v. Teator,* 1 S.W.3d 819 (Tex.App.—Dallas 1999, pet. filed), *Midkiff v. Hancock East Tex. Sanitation, Inc.,* 996 S.W.2d 414, 415–16 (Tex.App.—Beaumont 1999, no pet.), and the cases cited therein.

olution.[4] In so reserving the issue, the court clearly intended to make the order it signed something less than an entire and final adjudication of the suit. Indeed, one can neither reasonably nor logically say that all claims were resolved when a trial court states, after awarding a plaintiff summary judgment, that "any issues as to the amount of damages to be recovered by Plaintiff from Defendants are reserved for further proceedings by this Court." If this was not so and the Mother Hubbard Clause was given conclusive effect, then the court's intent could only be interpreted as 1) holding the covenant enforceable, 2) postponing the resolution of the damages, and 3) despite the latter expressed reservation, adjudicating the matter of damages on the merits. Such an interpretation of the court's action is simply nonsensical. Thus, we cannot but hold the "Partial Summary Judgment" as interlocutory and non-appealable.[5]

Accordingly, we dismiss this appeal for want of jurisdiction.

---

4. The decree involved in each of the three Supreme Court cases did not contain both a Mother Hubbard Clause and a provision expressly reserving issues for later resolution. Indeed, our situation is like the example used in *Lowe v. Teator*, 1 S.W.3d 819 (Tex.App.—Dallas 1999, pet. filed) which illustrates the "unintended and absurd results" a blind application of *Mafrige* would have if the intent of the trial court was not the focal point.

5. It is also a matter of note that if we were to hold the interlocutory decree final, we nonetheless would be obligated to reverse the appeal on the merits. This is so because the trial court effectively entered summary judg-

ment on a matter outside the scope of the summary judgment motions. That is, Burns pled two causes of action, breach of contract and conversion. The summary judgment motions merely encompassed the former. Thus, the trial court could not legitimately resolve the conversion claim. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (holding that the trial court cannot enter summary judgment on grounds omitted from the motion). So, to the extent that it allegedly did via the Mother Hubbard Clause, reversal would be unavoidable and the expense incurred by the litigants in pursing this appeal would be wasted.